FeeeMAN, J.,
delivered the opinion of the court.
This action was brought before a justice of the peace to recover for the value of a lot of dressed poultry shipped by Rogers and Hartsell, via East Ten *145 nessee, Virginia and Georgia Railroad, from Chattanooga, for which the company, by their agent, gave the following receipt: “Received of Rogers and Hartsell, for John F. Hagan, Atlanta, the following articles, to-wit: 1 barrel and one box of poultry, 239 lbs., to be forwarded by the East Tennesse and Georgia Railroad, subject to freight and the regulations of the company. Signed, Samuel Rose, Agent.”
In the agreed case in the record it is admitted by the plaintiffs that the defendant shipped the poultry at the proper time, and turned the same over in reasonable time, to the officers and agents of Western and Atlantic road, at Dalton, and that Dalton is the terminus of the East Tennessee, Virginia and Georgia Railroad, and that the Western and Atlantic road connects with it at Dalton, and extends to Atlanta, Georgia. It was further admitted that said box of poultry was detained by the agents of the Western and Atlantic road for thirteen days, and by this delay was spoiled and rendered valueless. It was further agreed, that when freight is shipped from the East Tennessee, Virginia and Georgia road to Atlanta, it is the usage and custom of the officers of the Western and Atlantic road to collect and settle the freight with the other road — that is, their pro rata. The property having been lost to the shipper by the neglect of duty on the part of the Western and Atlantic road, the question is as to the liability of the East Tennessee, Virginia and Georgia road for such loss, or how far one railroad can be held responsible for the negligence of another where the trans *146 portation is continuous and entire over their respective roads, under such a contract as the one in this case.
This is a question upon which the English courts, and many of our American courts, have adopted rules and made a series of decisions, the one distinctly opposite to the other. The English courts, with great unanimity, holding that the carrier giving the receipt and undertaking the carriage of goods from one point to another, is responsible for all the intermediate routes, unless he shall by express contract limit his liability to the transportation of the goods only to the end of his own road.
There has been diversity of opinion in the courts of the various States of the Union on this question, but it must be conceded that probably the weight of American authority is against the English rule. We have no distinct decision of this direct question in our State, though we think the principle has been adjudged in one case that would be conclusive of the question. We allude to the case of Carter & Hough v. Peck, 4 Sneed, 205. In that case the suit was brought to recover for breach of an alleged undertaking on the part of Carter & Hough to convey plaintiff and his family from Nashville to the city of Memphis. The defendants were the proprietors of a line of stages from Nashville to Waynes-borough. Sims & Co. owned the line from that point to Lagrange, Tennessee, where it connected with the Memphis and Charleston Railroad to Memphis. By an arrangement between all the parties, it was agreed that passengers might pay the whole fare at *147 either end of the line, and receive a through ticket, though it was not shown that plaintiff had any knowledge of this agreement — this knowledge, however, was treated by the court as unimportant. The plaintiff bought a ticket at Nashville for himself and wife to Memphis, but when he arrived at Waynesborough, Sims & Co. refused to take him on for several days; he was compelled to take another route and put to considerable expense and inconvenience. The court holds in that case, when the defendants sold plaintiff a ticket through from Nashville to Memphis, “ they thereby became bound for his transportation on the entire line,” and that the arrangement between the parties on the various lines of travel was a matter with which the plaintiff had nothing to do. He was no party to that agreement, nor was he bound to look to any person for performance of defendants’ undertaking but themselves. The court further say: If defendants when they sold plaintiff the tickets intended that he should risk the proprietors of the other portions of the line to carry him through, then they should have so stipulated and informed him of this arrangement, so that he might, with full knowledge of the facts, have elected whether he would pay the entire fare and take through tickets, or pay for that portion of the line of which they were the proprietors and make his own arrangements for the balance of the journey.” A similar rule is stated in case of E. T. and Ga. R. R. v. Nelson, 1 Col., 276, where Judge Wright says: “ If the carrier or his servant within the scope of his employment, enter *148 into a special contract to deliver in any particular time or place, even beyond the terminus of his particular route, it will be binding.”
These cases follow the principle of the English decisions, and we think lay down the sounder doctrine on the subject.
The leading case in England on this question is that of Muschamp v. The Lancaster and Preston Junction Railroad Co., 8 Mees, and Welsby, 421, in which it was held by the Court of Exchequer, “that where a carrier receives goods directed to a place beyond the terminus of his own route, without limiting his responsibility by express agreement, such receipt of the goods so directed is prima facie evidence of an undertaking to carry the goods to the place where they are directed, and that the rule applies although the place be beyond the terminus of his own usual route, and a loss having occurred in that case beyond such terminus, the carrier was held liable for such loss.”
Much more ought the party to be held liable where, as in this case, he has received the goods with an express understanding, as we construe it, that they shall be forwarded to their destination. The word “ forwarded, ” used in this respect, means to be transported or carried, and such was no doubt the understanding of both parties. Such is the construction given to such a receipt in a late case by the Supreme Court of Vermont— Cults v. Brainerd, Am. Rep., vol. 1, 354 — where it was held, that the railroad company giving a receipt for goods at Burlington, marked *149 for W. R. Lewis, Brooklin, Iowa, and promising to forward by its railroad, bound itself to carry said box to its destination. We think the principle of this case sound and adopt it. We need not go into a review of the various cases on the question, which are numerous both in the United States and in England, and especially contradictory in the United States. We adopt the language of a writer in the American Law Review, vol. 2, 1867-8, that this rule — that a carrier, by simply taking charge and possession of goods delivered to him for carriage, marked and destined to a particular place beyond the terminus of his own road, (unless he shall in some clear and express manner, by agreement with the consignor, limit his responsibility to the mere carnage over his own road and safe delivery to next carrier,) shall be bound to complete the contract which he impliedly undertakes to perform, more especially when he has expressly undertaken so to deliver the article received — will more nearly reach the equity of the case, and carry out the fair terms of the contract, than any other which can be adopted.
We feel no disposition to relax the rule of liability on the part of railroads, now having almost a monopoly of the transportation of all the products of the industry, as well as articles of merchandise, of this great and rapidly developing country. It would seriously incommode the business of the country if, when property is shipped by one road and must pass over more than this road in order to reach its destination, the shipper, in ease of injury to his goods, is to *150 enquire- bow many routes, and bow many, different-companies make up the line between the place of shipment and delivery, or to determine at his peril which company is liable for the injury. See 24 Barb., 382.
"Without citing further authorities on the question, we hold the charge of his Honor in this case to be correct, who held in accordance with the vieivs of this opinion, and affirm the judgment of the Circuit Court.